IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KELLY SCHURR WILLARD, Guardian )
ad Litem of GCW, a Minor, )
 )
              Plaintiff, )
 )
       v. )   1:05CV00554
 )
UNITED PARCEL SERVICE, an Ohio )
Corporation, and CATHE C. )
HENDERSON, Administrator of the )
Estate of Douglas Kenneth )
Dickerson, Deceased, )
 )
             Defendants. )

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

This case was originally filed in the Superior Court in Guilford County, North Carolina. Defendants removed the case to this Court on the basis of diversity jurisdiction. Plaintiff now seeks to have the case remanded to state court.

### Facts

The basic facts of the case do not appear to be in serious dispute, at least for the purpose of deciding this motion. Plaintiff's complaint alleges that, on January 12, 1994, she was driving an automobile that was struck by a delivery truck driven by Douglas Dickerson. The truck was owned by defendant United Parcel Service (UPS) and was being used as part of UPS's parcel delivery business at the time of the accident.

Plaintiff, who was four months pregnant with GCW at the time, suffered a number of lacerations and fractures during the accident. She also had internal bleeding in the placenta attached to GCW.

Believing that the accident was caused by negligence on the part of Dickerson, she filed a lawsuit against him and UPS. That suit was later settled as to her injuries. The settlement explicitly did not cover medical costs associated with any injuries to plaintiff's unborn child. (Def. Opp. Brf. Ex. B)

In 1998, Dickerson died and his wife, LaTonya Dickerson (now LaTonya Cole Crenshaw), was appointed the administrator of his estate. The estate was quickly dissolved, depleted of assets and closed in late 1998. Over six years later, plaintiff's attorney contacted Crenshaw asking her to reopen Dickerson's estate so that plaintiff could pursue claims on behalf of GCW. She states in an affidavit that the attorney told her that plaintiff was going after "United Parcel Service's insurance," that he needed to reopen the estate "in order to pursue UPS," and that "he was not trying to go after [Dickerson's] estate, but that he was only interested in going after UPS." (UPS Mot. Opposing Remand Ex. D ¶¶ 5-6) Still, Crenshaw refused to sign the documents allowing the estate to be reopened. Plaintiff's counsel then had the estate reopened with defendant Henderson as the administrator.

After Dickerson's estate was reopened, plaintiff filed suit in state court alleging that GCW was born with permanent and disabling brain injuries that resulted from the automobile collision. The complaint claims that both Dickerson and UPS were negligent in causing the collision.

Following the filing of the lawsuit, defendants removed the case to this Court. They contend that the requirements for

diversity jurisdiction set out in 28 U.S.C. § 1332 are met. Plaintiff claims that they are not and has now moved to remand the case to state court.

### **Discussion**

The Fourth Circuit has stated that the party seeking removal has the burden of demonstrating the existence of federal jurisdiction. <u>Mulcahey v. Colombia Organic Chemicals Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994)(citing <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). Removal jurisdiction must be strictly construed and, if it is doubtful, remand is appropriate. <u>Id.</u>(citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). This is because plaintiff's right to select the forum for her claim is stronger than defendants' right to remove. <u>Griffin v. Holmes</u>, 843 F. Supp. 81, 84 (E.D.N.C. 1993); <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994).

Federal courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a). In addition, any matter which may have been originally brought in federal court, but is filed in a state court, may be removed by defendants to federal district court. 28 U.S.C. § 1441(a). In diversity cases, however, removal can only occur where no defendant is a resident of the state where the case was brought. 28 U.S.C. § 1441(b).

Here, there is no dispute between the parties that the necessary amount in controversy is present. Likewise, there appears to be no dispute concerning the citizenship of the parties. Defendants state in their notice of removal that GCW is a citizen of North Carolina. Therefore, plaintiff must also be treated as one pursuant to 28 U.S.C. § 1332(c)(2). Dickerson was a citizen of North Carolina and, under the same statute, the administrator of his estate is also deemed to be a citizen of North Carolina. Finally, defendants state, and plaintiff has not disagreed, that UPS is a citizen of Georgia and Ohio.

On the face of these facts, it would appear that diversity jurisdiction is not present because both plaintiff and one of the defendants are from North Carolina. Rosmer v. Pfizer Inc., 263 F.3d 110, 123 (4th Cir. 2001)(complete diversity of citizenship of each plaintiff to each defendant is required for jurisdiction to exist). Also, the fact that one of the defendants is a citizen of North Carolina would prevent the case from being properly removed under 28 U.S.C. § 1441(b). However, defendants have removed the case relying on the doctrine of "fraudulent joinder." They claim that this doctrine allows the Court to disregard the fact that the administrator of Dickerson's estate is named as a defendant.

Despite its name, the doctrine of fraudulent joinder does not always deal with an actual fraud and does not necessarily impugn the integrity of plaintiff or her counsel. Instead, it is a "'judicially created doctrine that provides an exception to the requirement of complete diversity'" in certain circumstances.

-4-

Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)(quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)). The Fourth Circuit Court of Appeals has identified at least three such circumstances: (1) "'outright fraud in the plaintiff's pleading of jurisdictional facts,'" (2) "'no cause of action is stated against the nondiverse defendant,'" or (3) "'no cause of action exists'" against the nondiverse defendant. Id. at 464 (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)); AIDS Counseling and Testing Centers v. Group W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990)(quoting Lewis v. Time, Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd 710 F.2d 549 (9th Cir. 1983)). Regarding the last two scenarios, it added that "joinder is fraudulent if 'there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming.'" AIDS Counseling, 903 F.2d at 1003 (quoting Lewis, 83 F.R.D. at 460).

While a defendant may argue that the circumstances establishing fraudulent joinder are present in a given case, succeeding at this argument is not an easy task. Not only are the defendants faced with the previously discussed general burden to demonstrate jurisdiction, but all disputed issues of fact and law must be resolved in plaintiff's favor. Mayes, 198 F.3d at 464 (citing Marshall, 6 F.3d at 232-233). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). When deciding the

-5-

issue, "the court is not bound by the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" AIDS Counseling, 903 F.2d at 1004 (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).

In the notice of removal, defendants note that Dickerson's estate was depleted of assets and closed and that plaintiff, therefore, cannot recover from it. Defendants conclude that this made it "evident that plaintiff named [the estate] as a defendant in this matter for the sole purpose of defeating jurisdiction." (Notice of Removal ¶ 18)

It should first be noted that defendants' statement quoted above misses the mark to some degree because of its focus on plaintiff's motivation in naming the estate as a party. This is because "'the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined.'" Goldberg v. CPC International, Inc., 495 F. Supp. 233, 239 (N.D. Ca. 1980)(quoting Mecom v. Fitzsimmons Drilling Co., Inc., 284 U.S. 183, 189, 52 S.Ct. 84, 87, 76 L.Ed. 233 (1931). For this reason, the Court will focus its analysis on determining the correctness of defendants' contention that plaintiff cannot recover from the estate.

In her motion to remand, plaintiff advances three theories by which she claims to be able to recover against Dickerson's estate. The first two are based on alleged exceptions to North Carolina's "nonclaim statute," N.C. Gen. Stat. § 28A-19-3. That statute

-6-

states that most claims against estates are barred unless presented before the deadline published in a notice to creditors. While a closed estate may be reopened, only non-barred claims may be brought against the estate. N.C. Gen. Stat. § 28A-23-5.

Plaintiff contends first that the nonclaim statute does not bar her claim because its running is tolled while GCW is a minor. She bases this argument on N.C. Gen. Stat. § 1-17 which tolls certain statutes of limitation for the time period a person entitled to commence an action is a minor. Plaintiff believes that, even though the nonclaim statute is not a statute of limitation in the traditional sense of the term, it is analogous enough to a statute of limitation to fall within the tolling provision of N.C. Gen. Stat. § 1-17. The Court need not resolve this issue in order to decide the case.

Plaintiff's second argument seeks to show that she still has a viable claim against Dickerson's estate. This is based on the fact that Dickerson's liability for causing the wreck was, and is, covered by automobile insurance and that a claim covered by insurance is not barred by the nonclaim statute. To support this proposition, she quotes the statute itself, which states that "[n]othing in this section shall bar" recovery on a judgment against a decedent or personal representative "to the extent that the decedent or personal representative is protected by insurance coverage with respect to such claim, proceeding or judgment . . . ." N.C. Gen. Stat. § 23A-19-3(i). She also cites to Pierce v. Johnson, 154 N.C. App. 34, 43, 571 S.E.2d 661, 667 (2002), where

the North Carolina Court of Appeals applied this exception to the nonclaim statute and allowed an otherwise barred claim to proceed to the extent that insurance coverage existed.

Plaintiff's final effort to establish that she can maintain a claim against Dickerson's estate relies on the fact that, prior to the passage of the exception to the nonclaim statute just described, courts in North Carolina allowed plaintiffs to recover using automobile insurance policies even if claims against an estate were otherwise barred. The cases treated the policies as undistributed assets which were not covered by the nonclaim statute. See Thorpe v. Wilson, 58 N.C. App. 292, 293 S.E.2d 675 (1982); Force v. Sanderson, 56 N.C. App. 423, 289 S.E.2d 56, cert. denied, 306 N.C. 383, 294 S.E.2d 207 (1982); In re Miles' Estate, 262 N.C. 647, 138 S.E.2d 487 (1964). Plaintiff maintains that these cases are still good law and would allow recovery from the Dickerson estate in this case.

Defendants respond to plaintiff's second and third arguments in three ways, none of which entitle them to prevail. Their initial response brief contains only a single argument based on nonbinding precedent and the purported statements of plaintiff's counsel to LaTonya Crenshaw that he only wanted to reopen the estate in order to go after UPS and/or its insurance. Specifically, defendants cite Boyer v. Snap-On Tools Corp., 913 F.2d 108 (3d Cir. 1990), cert. denied, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991), and Goldberg, supra, for the proposition that the doctrine of fraudulent joinder can apply where

a plaintiff does not truly intend to seek a joint judgment against a nondiverse defendant. Defendants believe that this form of the fraudulent joinder doctrine applies here based on plaintiff's attorney's statements to Crenshaw.

Defendants' argument fails for a number of reasons. To start, at this stage, all factual and legal issues must be decided in plaintiff's favor. However, neither the facts nor the law indisputably support defendants' jurisdictional argument for finding fraudulent joinder. Before addressing the facts, the legal standard for assessing them must be clarified. As previously stated, defendants' legal argument on fraudulent joinder relies on nonbinding case law other than from the Fourth Circuit. The Fourth Circuit has itself used the phrase "no intention to seek a joint judgment" on at least one occasion. See <u>AIDS Counseling</u>, 903 F.2d at 1003. However, when it did so, it noted that joinder was fraudulent where no such intention existed <u>and</u> there is no colorable ground for claiming that such an intention exists. The phrase was employed as part of an explanation of the types of fraudulent joinder where no claim is pled against a defendant or none exists. Therefore, the Fourth Circuit would seem to reject using a plaintiff's expressed subjective intention alone as a ground for a finding of fraudulent joinder. Defendants must also show the absence of a basis for a claim. However, in this case, plaintiff shows that by statute and case law a viable claim against the estate exists.

Second, even if expressed subjective intent were sufficient to prove fraudulent joinder, the undisputed material facts do not support defendants' position. The alleged statements by plaintiff's attorney are, at best, an ambiguous support for defendants' theory. Defendants construe the statements as an admission that no judgment against the Dickerson estate will be sought. However, they are equally, if not more, susceptible to being interpreted as a saying that, if plaintiff eventually receives a judgment against the estate, she does not intend to pursue recovery from any assets of the estate other than automobile liability insurance purchased by UPS and covering Dickerson. The complaint makes it abundantly clear that plaintiff seeks a judgment against the Dickerson estate. Indeed, as pointed out in plaintiff's reply brief, such a judgment may actually be necessary in order to allow her to recover from the policy UPS purchased. Not only have defendants failed to show that plaintiff does not intend to seek a judgment against the estate, but, by drawing all factual inferences in favor of plaintiff, the Court finds that she does have a good faith intention to seek a judgment against the Dickerson estate.

After filing their initial response brief, defendants sought and received permission from the Court to file a supplemental response brief. In that brief, they raise two further arguments. The first is a legal argument refuting plaintiff's contention that the nonclaim statute is tolled while GCW is a minor. However, defendants must and do admit that it appears that North Carolina

law does not bar plaintiff from pursuing recovery from the Dickerson estate based on insurance as noted earlier. In fact, they state affirmatively that "North Carolina's non-claim statute . . . grants plaintiff the right to bring suit against the estate" and that plaintiff's argument in this regard "appears to have some merit." (Def. Supp. Resp. pp. 1, 2) Therefore, the question of whether the nonclaim statute was or was not tolled due to GCW being a minor becomes irrelevant as to the issue of fraudulent joinder. The parties agree that North Carolina law allows plaintiff a cause of action against the Dickerson estate and that alone is enough to defeat removal.

In a last ditch effort to avoid a seemingly inevitable remand, defendants resort to a novel theory. They claim that the insurance exception to the North Carolina nonclaim statute "unfairly" deprives them of their right to remove the case to federal court. They admit that the nonclaim statute allows plaintiff to sue the Dickerson estate as a party, but note that the estate amounts to nothing more than the UPS insurance policy which they claim is barely distinguishable from UPS itself. In other words, according to defendants, because of UPS's own insurance policy, UPS cannot remove this case to federal court where it belongs. Defendants feel that this "is an unfair result, as UPS is clearly the only defendant in the case." (Id. p. 6)

The argument fails for any number of reasons. First, UPS and the UPS insurance policy are not the same entity and are quite distinguishable. Second, the fact that the estate may be a

-11-

beneficiary of the insurance policy does not somehow make the estate and UPS the same entity. Such a proposition would change not only the law in this case, but create a radical unforeseen change in other areas as well. Third, defendants' theory is completely unsupported by any citation to any form of law. Boiled down to its essentials, it is a pure policy argument aimed at convincing the Court to expand the doctrine of fraudulent joinder and, therefore, its jurisdiction, based on the specific facts of this case. Even if this were appropriate, the Court would not do so, if for no other reason than UPS is not being treated unfairly.

The result in this case does not deprive UPS of a right, much less in an unfair fashion. In all removal cases involving only diversity jurisdiction, that jurisdiction, and therefore a party's right to remove a case, is always controlled in some way by state law. State law defines the causes of action that can be brought and the parties that can be named as defendants as to each cause of action. Where nondiverse parties can be sued, the right to remove exists or does not exist based on state law. Here, state law allows plaintiff to pursue a claim against the Dickerson estate. She has done so. Therefore, UPS was not unexpectedly deprived of its right to remove the case. That right simply never existed. The United Parcel Service does not show that the state law with respect to estates only operates when a defendant is from out of state. The operation of the law here is no more fair or unfair than in any other cause of action defined by state law in diversity cases. Plaintiff's motion to remand should be granted.

There is one final matter. In the motion to remand, plaintiff requests an award of attorney's fees. Such fees, as well as costs and any actual expenses, may be awarded under 28 U.S.C. § 1447(c). However, they are not required. Plaintiff has not briefed the issue of fees and this alone is enough to deny the request. Further, while bad faith is not required, the Fourth Circuit Court of Appeals has declined to award fees under § 1447 where there is no bad faith. In re Lowe, 102 F.3d 731, 733 n.2 (4th Cir. 1996). Another court refused to award fees when a defendant had a "fairly supportable" basis for removal and it was not "crystal clear" that removal was inappropriate. Cavette v. Mastercard International, Inc., 282 F. Supp. 2d 813, 820 (W.D. Tenn. 2003). This is also an accurate description of, and a good result for, the present case. While UPS was not ultimately successful in defeating the motion to remand, its notice of removal was at least colorable at the time it was made. Therefore, the Court will not award any fees or costs.

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion to remand (docket no. 5) be granted as to her request for remand, but denied as to her request for attorney's fees, and that an Order be entered remanding this case to the Superior Court in Guilford County, North Carolina.

/s/ Russell A. Eliason
United States Magistrate Judge

November 16, 2005